UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------X

MANUEL LIZONDRO-GARCIA, LUIS CRUZ,:
JORGE GARCIA, JERALDO GONZALEZ,
ALEKSANDER VELIC, JAVIER TOLEDO,  :    12 Civ. 1906 (HBP)
OSCAR RAMIREZ, MOISES JIMENEZ,
MARCO REAL, on behalf of          :    OPINION
themselves and others similarly        AND ORDER
situated,                         :

                 Plaintiffs,      :

    -against-                     :

KEFI LLC, doing business as KEFI  :
RESTAURANT and KOSTANTINOS
DAMANIOS,                         :

                 Defendants.      :

----------------------------------X

          PITMAN, United States Magistrate Judge:


I.  Introduction


          Manuel Lizondro-Garcia, Luis Cruz, Jorge Garcia,

Jeraldo Gonzalez, Aleksander Velic, Javier Toledo, Oscar Ramirez,

Moises Jimenez and Marco Real ("plaintiffs"), on behalf of

themselves and others similarly situated, commenced this action

pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C.

§§ 201 et seq., and New York Labor Law ("NYLL") Sections 191 et

seq. to recover unpaid overtime and spread-of-hours compensation,

improperly withheld tips and statutory damages.  Plaintiffs

commenced this action as a collective action under 29 U.S.C. § 216(b) and as a putative class action under Fed.R.Civ.P. 23 with respect to the Labor Law claims.

All parties have consented to my exercising plenary jurisdiction in this matter pursuant to 18 U.S.C. § 636(c).

By notice of motion dated August 29, 2014 (Docket Item 59), plaintiffs move for final approval of a class action settlement ("Motion for Final Approval"). Specifically, plaintiffs seek an Order (1) certifying the final settlement class (the "Settlement Class"), (2) approving the settlement agreement and (3) awarding fees and costs to class counsel, service awards to the named plaintiffs and fees to the claims administrator (Plaintiffs' Memorandum of Law in Support of Motion for Final Approval of Class Action Settlement, dated Aug. 29, 2014, (Docket Item 60) ("Pls.' Mem. for Final Approval") at 13, 23).

For the reasons set forth below, plaintiffs' motion is granted in part and denied in part.

II.  Factual and
     Procedural Background

          The complaint alleges that plaintiffs, and members of
the FLSA collective and putative NYLL class,[1] are or were
employed by defendants as servers, bartenders, baristas, bar-
backs, bussers or runners (Compl. ¶¶ 13-21).  Plaintiffs allege
that defendants failed to pay them the premium overtime rate for
hours they worked in excess of 40 hours and spread-of-hours pay
for days they worked in excess of 10 hours (Compl. ¶¶ 36-37, 45-
46; Declaration of Josef Nussbaum, Esq., dated Aug. 29, 2014,
(Docket Item 61) ("Nussbaum Decl."), ¶ 5).  Plaintiffs also
allege that defendants improperly forced plaintiffs to share
their tips with "managers and party planners" (Compl. ¶¶ 43-44;
Nussbaum Decl., ¶¶ 5-6).

          In May 2012, the parties agreed to promptly exchange
limited discovery in order to facilitate the prompt settlement of

---

          [1]The Complaint alleges that the FLSA collective includes
non-exempt employees who worked for defendants from March 15,
2009 to March 15, 2012 in "tipped position[s]" (Complaint, dated
Mar. 15, 2012, (Docket Item 1) ("Compl.") ¶ 22; Plaintiffs'
Memorandum of Law in Support of Motion for Preliminary Approval
of Class Action Settlement, dated Nov. 5, 2013, (Docket Item 55)
("Pls.' Mem. for Preliminary Approval") at 2) and that the NYLL
class action includes non-exempt employees who worked for
defendants from December 1, 2008 to June 30, 2013 in tipped
positions (Compl. ¶ 25; Pls.' Mem. for Preliminary Approval at 2,
11).

this matter.  Defendants produced tip sheets, payroll records and clock-in reports for several of defendants' employees covering a sixteen-week period (Nussbaum Decl., ¶¶ 7-8).  After reviewing defendants' records, plaintiffs estimated the total damages owed to the FLSA collective and the putative NYLL class (Nussbaum Decl., ¶ 8).

On May 30, 2013, I conducted a settlement conference that was attended by counsel and the parties.  The parties were unable to resolve the case at that time.

After further fact discovery, counsel for plaintiffs reduced their estimate of plaintiffs' aggregate actual damages to approximately $280,000.00[2] (Nussbaum Decl., ¶ 11).  Thereafter, the parties arrived at a settlement (Nussbaum Decl., ¶ 11 and Ex. 1 annexed thereto).

The settlement agreement provides that defendants, without conceding the validity of plaintiffs' claims and without admitting liability, agree to establish a common fund of $315,000.00 (Nussbaum Decl., Ex. 1 at ¶¶ 1.28, 3.1, 4.2).  From the fund, the nine named plaintiffs will each receive service awards of $1,000.00, the claims administrator will receive an estimated $15,239.11 to set up and distribute monies from the

---

[2]Counsel for plaintiffs does not allocate the $280,000.00 between the FLSA and the NYLL claims.

fund and counsel for plaintiffs will receive attorneys' fees and costs, subject to the Court's approval, and not to exceed $105,000.00 (Nussbaum Decl., Ex. 1 at ¶¶ 1.27, 3.2-3.3).

The settlement agreement states that the remainder will be divided up and awarded as follows:  25% to individuals who opt in to the FLSA collective and 75% to individuals who remain in the NYLL class (Nussbaum Decl., ¶¶ 12-13).  Each member of the FLSA collective will be paid a pro rata share of the 25%, calculated by dividing the number of hours each member of the collective worked for defendants by the aggregate number of hours worked by the collective (Nussbaum Decl., Ex. 1 at ¶ 3.4(B)(4)).  Each member of the putative NYLL class will be awarded a pro rata share of the 75% calculated on the same basis (Nussbaum Decl., Ex. 1 at ¶ 3.4(B)(3), (5)-(6)).  No class member will receive an award of less than $100.00 (Nussbaum Decl., Ex. 1 at ¶ 3.4(B)(2)).  Any unclaimed funds will revert to defendants (Nussbaum Decl., Ex. 1 at ¶¶ 3.1(I), 3.4(B)(8)).[3]  In return,

---

[3]The claims administrator will disburse the awards to class members from the Net Settlement Fund, i.e., the amount of the settlement fund remaining after disbursement of the claims administrator's fees, service awards and class counsel's fees and costs (Nussbaum Decl., Ex. 1 at ¶¶ 1.16, 3.4).  Class members will have ninety days to cash their checks and an additional ninety days to request replacement checks; after the expiration of those periods, any uncashed checks will revert to defendants. (Nussbaum Decl., Ex. 1 at ¶¶ 3.1(D), (H)-(I), 3.4(B)(8)).

each individual who opts into the collective and remains in the
class will release defendants from all wage and hour claims that
were brought or that could have been brought in this action
(Nussbaum Decl., Ex. 1 at ¶¶ 2.9(B), 4.1).  Defendants will not
be released from the FLSA claims of FLSA collective members who
do not endorse their settlement checks (Nussbaum Decl., Ex. 1 at
¶ 2.9(B)).

On May 29, 2014, I preliminarily approved the settle-
ment on behalf of the FLSA collective and NYLL class, condition-
ally certified the NYLL class, appointed Joseph & Kirschenbaum
LLP as class counsel and authorized the mailing of the notice of
settlement (with minor modifications) to all class and collective
members (Opinion and Order, dated May 29, 2014, (Docket Item 57)
("Preliminary Approval Order") at 28-31).

Also on May 29, 2014, the approved notice (the "No-
tice") was sent to all 235 potential class members, informing
them of (1) their rights under the settlement (including the
right to opt out of or object to the settlement); (2) class
counsel's intention to seek one-third of the settlement fund for
attorneys' fees and costs; (3) the request for service awards of
$1,000.00 for each named plaintiff and (4) the claims administra-
tor's fees (Nussbaum Decl., ¶¶ 14, 19 and Ex. 3 annexed thereto).

No class members objected to the settlement, and only one class member opted out (Nussbaum Decl., ¶ 15).

On August 29, 2014, Plaintiffs filed the pending motion for final approval.  Defendants took no position with respect to the motion.  I held a fairness hearing on September 12, 2014.  No class member appeared at the hearing or submitted anything to me concerning the settlement.

III.   Analysis

   A.   Final Certification
        of the Settlement Class

On May 29, 2014, I issued an Opinion and Order, familiarity with which is assumed, in which I concluded that the Settlement Class satisfied the requirements of numerosity, commonality, typicality, adequacy, ascertainability and maintainability under Rule 23(a) and (b)(3), and preliminarily granted conditional certification of the Settlement Class, "consisting of all individuals who work or worked for defendants as servers, bartenders, baristas, barbacks, bussers and runners from December 1, 2008 to June 30, 2013" (Preliminary Approval Order at 6-18, 29-30).

To date, no facts have been presented to me to indicate that my preliminary determination was incorrect.  Thus, for the

reasons stated in my May 29, 2014 Opinion and Order, I conclude that final certification of the Settlement Class is proper.

    B.  Approval of
<u>Settlement Agreement</u>

Pursuant to Fed.R.Civ.P. 23(e), the settlement of a class action is not effective until judicially approved.  Although there is a general policy favoring settlements, the court may approve a class action settlement only if it "is fair, adequate, and reasonable, and not a product of collusion." <u>Joel A. v. Giuliani</u>, 218 F.3d 132, 138 (2d Cir. 2000).  This requires consideration of both procedural and substantive fairness.  <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396 F.3d 96, 116 (2d Cir. 2005), <u>citing</u> <u>D'Amato v. Deutsche Bank</u>, 236 F.3d 78, 85 (2d Cir. 2001) ("A court determines a settlement's fairness by looking at both the settlement's terms and the negotiating process leading to settlement.").

    1.  <u>Procedural Fairness</u>

In assessing procedural fairness, there is "a presumption of fairness, reasonableness, and adequacy as to the settlement where 'a class settlement [is] reached in arm's-length negotiations between experienced, capable counsel after meaning-

ful discovery.'" McReynolds v. Richards-Cantave, 588 F.3d 790, 803 (2d Cir. 2009) (brackets in original), quoting Wal-Mart Stores, Inc. v. Visa U.S.A., Inc., supra, 396 F.3d at 116.

"In addition, courts encourage early settlement of class actions, when warranted, because early settlement allows class members to recover without unnecessary delay and allows the judicial system to focus resources elsewhere." Beckman v. KeyBank, N.A., 293 F.R.D. 467, 474 (S.D.N.Y. 2013) (Ellis, D.J.), citing Hernandez v. Merrill Lynch & Co., Inc., 11 Civ. 8472 (KBF)(DCF), 2012 WL 5862749 at *2 (S.D.N.Y. Nov. 15, 2012) (Freeman, M.J.); Castagna v. Madison Square Garden, L.P., 09 Civ. 10211 (LTS)(HBP), 2011 WL 2208614 at *6 (S.D.N.Y. June 7, 2011) (Swain, D.J.); Diaz v. E. Locating Serv. Inc., 10 Civ. 4082 (JCF), 2010 WL 5507912 at *3 (S.D.N.Y. Nov. 29, 2010) (Francis, M.J.).

Here, the parties have engaged in responsible, arm's-length negotiations to reach an early pre-suit settlement. Defendants provided class counsel with multiple samples of time sheets and payroll records, supplementing those samples as requested by class counsel, and explained that complicated data to class counsel (Nussbaum Decl., ¶¶ 7-8).  This enabled class counsel to estimate total potential damages of $280,000.00 and to evaluate the strengths and weaknesses of their claims (Nussbaum

Decl., ¶¶ 8, 11).  On May 30, 2013, the parties attended a
settlement conference before me, engaging in intensive, albeit
unsuccessful, negotiations (Nussbaum Decl., ¶ 9).  The parties
continued discovery, as well as settlement discussions (Nussbaum
Decl., ¶¶ 9-10).  As a result, they ultimately reached a final
agreement that was memorialized on October 30, 2013 (Nussbaum
Decl., ¶ 11).

Thus, I conclude that the settlement is procedurally
fair pursuant to Rule 23(e).

### 2. Substantive Fairness

In assessing whether a settlement is substantively
fair, the Court of Appeals for the Second Circuit established the
nine-factor test set forth in City of Detroit v. Grinnell Corp.,
495 F.2d 448, 463 (2d Cir. 1974).  See McReynolds v. Richards-
Cantave, supra, 588 F.3d at 804; accord Charron v. Wiener, 731
F.3d 241, 247 (2d Cir. 2013); Morris v. Affinity Health Plan,
Inc., 859 F. Supp. 2d 611, 619 (S.D.N.Y. 2012) (Carter, D.J.); In
re Giant Interactive Grp., Inc. Secs. Litig., 279 F.R.D. 151, 160
(S.D.N.Y. 2011) (Engelmayer, D.J.).  Those factors include:

> (1) the complexity, expense and likely duration of the
> litigation; (2) the reaction of the class to the set-
> tlement; (3) the stage of the proceedings and the
> amount of discovery completed; (4) the risks of estab-
> lishing liability; (5) the risks of establishing dam-

ages; (6) the risks of maintaining the class action
through the trial; (7) the ability of the defendants to
withstand a greater judgment; (8) the range of reason-
ableness of the settlement fund in light of the best
possible recovery; (9) the range of reasonableness of
the settlement fund to a possible recovery in light of
all the attendant risks of litigation.

McReynolds v. Richards-Cantave, supra, 588 F.3d at 804, quoting

City of Detroit v. Grinnell Corp., supra, 495 F.2d at 463.  All

the Grinnell factors weigh in favor of final approval.

Litigation through trial would be complex, expensive
and long.  Thus, the first Grinnell factor supports final ap-
proval.

The class's reaction to the settlement was extremely
positive.  The Notice informed class members of their rights
under the settlement and all the material terms of the settle-
ment.  No class member objected to the settlement and only one
opted out; this positive response to the settlement is evidence
of its fairness.  See Wright v. Stern, 553 F. Supp. 2d 337, 345
(S.D.N.Y. 2008) (Chin, D.J.) ("The fact that the vast majority of
class members neither objected nor opted out is a strong indica-
tion that the proposed settlement is fair, reasonable, and
adequate."); see also Beckman v. KeyBank, N.A., supra, 293 F.R.D.
at 475 (concluding class reaction was positive where none ob-
jected and eight of 1,735 members opted out); Flores v. Anjost
Corp., 11 Civ. 1531 (AT), 2014 WL 321831 at *5 (S.D.N.Y. Jan. 29,

11

2014) (Torres, D.J.) (approving settlement where no class member objected or opted out); Guaman v. Ajna-Bar NYC, 12 Civ. 2987 (DF), 2013 WL 445896 at *5 (S.D.N.Y. Feb. 5, 2013) (Freeman, M.J.) (finding fairness where there were no objections or requests for exclusion).  Thus, the second Grinnell factor weighs in favor of final approval.

When evaluating the level of discovery completed, "[t]he pertinent question is 'whether counsel had an adequate appreciation of the merits of the case before negotiating.'" Prasker v. Asia Five Eight LLC, 08 Civ. 5811 (MGC), 2010 WL 476009 at *5 (S.D.N.Y. Jan. 6, 2010) (Cedarbaum, D.J.), quoting In re Warfarin Sodium Antitrust Litig., 391 F.3d 516, 537 (3d Cir. 2004).  Here, the plaintiffs obtained sufficient payroll data from defendants to weigh the strengths and weaknesses of their claims (Nussbaum Decl., ¶¶ 7-8).  The parties engaged in multiple communications to facilitate plaintiffs' counsels' understanding of defendants' complex payroll records (Nussbaum Decl., ¶ 7).  The parties continued to explore the claims and defenses throughout the settlement negotiations.  Thus, the third Grinnell factor weighs in favor of final approval.

"Litigation inherently involves risks," both in establishing liability and damages.  In re PaineWebber Ltd. P'ships Litig., 171 F.R.D. 104, 126 (S.D.N.Y. 1997) (Stein, D.J.), aff'd,

117 F.3d 721 (2d Cir. 1997), <u>citing</u> <u>In re Ira Haupt & Co.</u>, 304 F. Supp. 917, 934 (S.D.N.Y. 1969) (Motley, D.J.) ("If settlement has any purpose at all, it is to avoid a trial on the merits because of the uncertainty of the outcome."). Here, the claims and defenses are fact-intensive and present risks, including the potential inability to prove unpaid wages, overcoming the poten- tial argument that plaintiffs' are not certifiable as a class or collective and issues concerning the defendants' willfullness. Settlement eliminates these uncertainties. Thus, the fourth and fifth <u>Grinnell</u> factors support final approval.

The risk of maintaining collective and class certifica- tion throughout trial also weighs in favor of final approval. A contested motion for certification would likely require extensive discovery and briefing, and, if granted, could potentially result in an interlocutory appeal pursuant to Fed.R.Civ.P. 23(f) or a motion to decertify by defendants, requiring additional briefing. "Settlement eliminates the risk, expense, and delay inherent in the litigation process." <u>Sukhnandan v. Royal Health Care of Long Island LLC</u>, 12 Civ. 4216 (RLE), 2014 WL 3778173 at *7 (S.D.N.Y. July 31, 2014) (Ellis, M.J.). The sixth <u>Grinnell</u> factor supports final settlement approval.

Neither party has argued that defendants could not pay a judgment greater than the settlement amount. However, "[e]ven

13

if [they] could have withstood a greater judgment, a 'defendant's ability to withstand a greater judgment, standing alone, does not suggest that the settlement is unfair.'"  Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 476, quoting Frank v. Eastman Kodak Co., 228 F.R.D. 174, 186 (W.D.N.Y. 2005) (citation omitted). Thus, this factor is neutral and does not preclude final settlement approval.

"'[T]here is a range of reasonableness with respect to a settlement -- a range which recognizes the uncertainties of law and fact in any particular case and the concomitant risks and costs necessarily inherent in taking any litigation to completion.'"  Frank v. Eastman Kodak Co., supra, 228 F.R.D. at 186, quoting Newman v. Stein, 464 F.2d 689, 693 (2d Cir. 1972).  Here, the $315,000.00 settlement falls within the range of reasonableness.  Class counsel estimates plaintiffs' "hard damages" at $280,000.00 plus some amount for liquidated damages and attorneys' fees (Nussbaum Decl., ¶ 11).  In light of the best possible recovery and the attendant risks of litigation, this settlement provides the class a fair recovery.  Thus, the eighth and ninth Grinnell factors also weigh in favor of final approval.

Because all the relevant factors weigh in favor of the settlement, I hereby grant the motion for final approval and

14

unconditionally approve the settlement as set forth in the settlement agreement.

C.  Approval of the
    FLSA Settlement

A settlement in an FLSA collective action is not effective unless it is judicially approved. Wolinsky v. Scholastic Inc., 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (Furman, D.J.) ("[A]n employee may not waive or otherwise settle an FLSA claim for unpaid wages for less than the full statutory damages unless the settlement is supervised by the Secretary of Labor or made pursuant to a judicially supervised stipulated settlement."); Bouzzi v. F & J Pine Rest., LLC, 841 F. Supp. 2d 635, 639 (E.D.N.Y. 2012) ("The FLSA imposes strict limits on an employee's ability to waive claims for fear that employers will coerce employees into settlement and waiver." (internal quotation marks & brackets omitted)); accord Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 476; Chavarria v. N.Y. Airport Serv., LLC, 875 F. Supp. 2d 164, 176 (E.D.N.Y. 2012); Willix v. Healthfirst, Inc., No. 07 Civ. 1143 (ENV)(RER), 2011 WL 754862 at *5 (E.D.N.Y. Feb. 18, 2011). However, settlement of a collective action does not implicate the same due process concerns as the settlement of a class action, "because, under the FLSA, 'parties may elect to opt

15

in but a failure to do so does not prevent them from bringing their own suits at a later date.'" Beckman v. KeyBank, N.A., supra, 293 F.R.D. at 476, quoting McKenna v. Champion Int'l Corp., 747 F.2d 1211, 1213 (8th Cir. 1984).  Accordingly, an FLSA settlement is examined with less scrutiny than a class action settlement; the court simply asks whether the settlement reflects a fair and reasonable compromise of disputed issues that was reached as a result of contested litigation.  Wolinsky v. Scholastic Inc., supra, 900 F. Supp. 2d at 335.

Here, the settlement resulted from arm's-length negotiations resolving disputed issues.  Throughout the contested litigation, the parties were represented by class counsel experienced in wage and hour law, and there is no evidence that even suggests any collusion.  Accordingly, the settlement meets the standard for approval.

D.  Dissemination
    of Notice to Class

Pursuant to the Preliminary Approval Order, plaintiffs revised the proposed notice[4] to inform class members of their

---

[4]Although the Preliminary Approval Order directed class counsel to append an opt-in form to the notice, defining the FLSA collective and the process for opting into the collective action, I subsequently granted class counsel's request to eliminate this
(continued...)

right to enter an appearance through an attorney and to request exclusion (Nussbaum Decl., Ex. 3 at 4-5). Plaintiffs also amended the class definition to reflect the conditionally certified settlement class definition (Nussbaum Decl., Ex. 3 at 2). Finally, Angeion Group, the claims administrator, mailed the Notice to all 235 known class members pursuant to the Preliminary Approval Order (Nussbaum Decl., ¶¶ 14, 19). I conclude that the Notice fairly and adequately advised class members of the terms of the settlement, as well as the right of members of the class to opt in to the collective action, to object to the settlement and to appear at the fairness hearing conducted on September 12, 2014. Pursuant to Rule 23(c)(2)(B), class members were provided with "the best notice that [was] practicable under the circumstances." Further, I conclude that the Notice and the process by which it was distributed comported with all constitutional requirements, including those of due process. I confirm Angeion Group as the claims administrator.

---

⁴(...continued)
form based on the expiration of the FLSA statute of limitations (Endorsed Letter of Josef Nussbaum to the undersigned, dated Aug. 27, 2014, (Docket Item 58); Preliminary Approval Order at 29).

E.   Award of Fees and
     Costs to Class Counsel

Under the FLSA, a court "shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b); see Cesario v. BNI Constr., Inc., 07 Civ. 8545 (LLS)(GWG), 2008 WL 5210209 at *6 (S.D.N.Y. Dec. 15, 2008) (Gorenstein, M.J.), adopted at, 2009 WL 424136 (S.D.N.Y. Feb. 19, 2009) (Stanton, D.J.).  The New York Labor Law also provides that a successful plaintiff may recover attorneys' fees and costs.  N.Y. Labor L. §§ 198, 663(1).  Even where the plaintiff agrees to a settlement, counsel is still entitled to his or her fees under the FLSA and NYLL.  Kahlil v. Original Old Homestead Rest., Inc., 657 F. Supp. 2d 470, 474 (S.D.N.Y. 2009) (Holwell, D.J.).

1.  Attorneys' Fees

Class counsel seeks one-third of the $315,000.00 settlement fund, or $105,000.00, as attorneys' fees and costs in the amount of $607.00 in connection with their representation of plaintiffs (Pls.' Mem. for Final Approval at 17).  They contend that fees should be calculated using the percentage method rather than the lodestar method.  (Pls.' Mem. for Final Approval at 17).

18

The plaintiffs were represented by attorneys at the firm of Joseph & Kirschenbaum LLP.  Class counsel has represented the plaintiffs without compensation under a contingent fee arrangement (Nussbaum Decl., ¶ 41).  There have been no objections to the attorneys' fees as described in the Notice (Nussbaum Decl., ¶ 42).

Class counsel calculated the hourly rates, total time worked and total paralegal time worked as of August 29, 2014 as follows:

| Attorney | Rate Sought | No. of Hours | Fee Sought |
|---|---|---|---|
| D. Maimon Kirschenbaum Partner and manager of firm's Food Service Wage and Hour Department; 9 years at firm | $500/hour | 18.0 | $9,000.00 |
| Josef Nussbaum 3 years at firm | $325/hour | 146.3 | $47,547.50 |
| Denise A. Schulman 3 years at firm; specializes in wage and hour and discrimination cases "exclusively" | $325/hour | 2.3 | $747.50 |
| Matthew D. Kadushin Practicing 14 years; 5 years at the firm | $450/hour | 0.1 | $45.00 |
| Paralegals | $125/hour | 92.7 | $11,587.50 |
| | | Total | $68,927.50 |

(Nussbaum Decl., ¶¶ 21-29, 39).  Class counsel also provided the qualifications of each attorney for whom fees are sought (Nussbaum Decl., ¶¶ 21-29).

The Court of Appeals has repeatedly held in unambiguous terms that an application for attorney's fees <u>must</u> be supported by "contemporaneous time records" that "specify, for each attorney, the date, the hours expended, and the nature of the work done."  <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, 711 F.2d 1136, 1148 (2d Cir. 1983).  "<u>Carey</u> establishes what is essentially a <u>hard-and-fast rule</u> 'from which attorneys may deviate only in the rarest of cases' . . . ."  <u>Scott v. City of New York</u>, 643 F.3d 56, 57 (2d Cir. 2011) (emphasis added), <u>quoting</u> <u>Scott v. City of New York</u>, 626 F.3d 130, 133 (2d Cir. 2010).  Not even a District Judge's personal observations of an attorney's work can substitute for the required contemporaneous time records.  <u>Scott v. City of New York</u>, <u>supra</u>, 643 F.3d at 58.  The burden is on the attorney requesting fees to provide sufficient evidence, including production of contemporaneous time records or sufficient explanation for their absence.  <u>Lewis v. Coughlin</u>, 801 F.2d 570, 577 (2d Cir. 1986), <u>citing</u> <u>New York State Ass'n for Retarded Children, Inc. v. Carey</u>, <u>supra</u>, 711 F.2d at 1148, 1154.

Furthermore, in this Circuit,

> both the lodestar and the percentage of the fund meth-ods are available to district judges in calculating attorneys' fees in common fund cases[,] . . . guided by the traditional criteria in determining a reasonable common fund fee, including: "(1) the time and labor expended by counsel; (2) the magnitude and complexities of the litigation; (3) the risk of the litigation . . . ; (4) the quality of representation; (5) the requested fee in relation to the settlement; and (6) public policy considerations."

Goldberger v. Integrated Res., Inc., 209 F.3d 43, 50 (2d Cir. 2000), quoting In re Union Carbide Corp. Consumer Prods. Bus. Secs. Litig., 724 F. Supp. 160, 163 (S.D.N.Y. 1989) (Brieant, C.J.). In Goldberger, the Court stated that even where the percentage method was used, it "encourage[d] the practice of requiring documentation of hours as a 'cross check' on the reasonableness of the requested percentage." Goldberger v. Integrated Res., Inc., supra, 209 F.3d at 50. Courts in this Circuit have routinely employed the lodestar method as a cross-check of percentage method calculations and then assessed the final awards for reasonableness under the six Goldberger criteria. See, e.g., Masters v. Wilhelmina Model Agency, Inc., 473 F.3d 423, 436 (2d Cir. 2007); Flores v. Anjost Corp., supra, 2014 WL 321831 at *9; In re Penthouse Exec. Club Comp. Litig., 10 Civ. 1145 (KMW), 2014 WL 185628 at *10 (S.D.N.Y. Jan. 14, 2014) (Wood, D.J.).

21

In addition, in order for me to make a determination as to the reasonableness of the award sought, the plaintiffs must provide sufficient information not only regarding the qualifications of the attorneys, but also of the paralegals for whom fees are sought.  See, e.g., Yea Kim v. 167 Nail Plaza, Inc., 05 Civ. 8560 (GBD)(GWG), 2009 WL 77876 at *9 (S.D.N.Y. Jan. 12, 2009) (Daniels, D.J.) (reducing paralegal rate where no information was provided to the court regarding paralegals' backgrounds); Tlacoapa v. Carregal, 386 F. Supp. 2d 362, 370 (S.D.N.Y. 2005) (Robinson, D.J.) (reducing paralegal rate from $125.00 to $75.00 where plaintiffs provided limited information regarding paralegals' qualifications and the nature of their work).

Plaintiffs have provided a chart summarizing the hours worked and rates for each attorney and the paralegals that totals $68,927.50 in fees and costs.  Plaintiffs, however, have not submitted the requisite contemporaneous time records nor have they provided any explanation for their failure to provide such records.  Without adequate documentation of the work completed by each attorney for whom fees are sought, I cannot make a determination as to the reasonableness of the award under the Goldberger criteria.

Accordingly, the plaintiffs' motion for attorneys' fees is denied without prejudice to renewal within the next thirty

days.  See Union of Orthodox Jewish Congregations of Am. v.
Queseria Fiesta, LLC, 12 Civ. 6059 (JPO), 2013 WL 1386965 at *3
(S.D.N.Y. Apr. 5, 2013) (Oetken, D.J.) (denying attorneys' fees
without prejudice and granting leave to supplement plaintiff's
submission where attorney provided only summary of hours worked
and rates but no contemporaneous time records).  Any renewed
application must contain contemporaneous time records for the
attorneys and paralegals who worked on this matter and should
contain the paralegals' qualifications.

    2.  Costs

    Class counsel also seeks reimbursement of costs of
$607.00 in connection with their representation of plaintiffs
(Pls.' Mem. for Final Approval at 17).

    "Attorneys may be compensated for reasonable
out-of-pocket expenses incurred and customarily charged to their
clients, as long as they 'were incidental and necessary to the
representation' of those clients."  Miltland Raleigh-Durham v.
Myers, 840 F. Supp. 235, 239 (S.D.N.Y. 1993) (Motley, D.J.),
quoting Reichman v. Bonsignore, Brignati & Mazzotta, P.C., 818
F.2d 278, 283 (2d Cir. 1987).  Here, class counsel's unreimbursed
expenses, including filing fees, process server fees and postage
and delivery costs, are reasonable and were incidental and

23

necessary to the representation of the class.  I award class
counsel reimbursement of their litigation expenses in the amount
of $607.00 which shall be paid from the settlement fund.

      F.  Named Plaintiffs'
         Service Awards

     The plaintiffs also request service awards of $1,000.00
to each of the nine named plaintiffs.

     Service awards, also called enhancement or incentive
awards, are common in class actions.  Beckman v. KeyBank, N.A.,
supra, 293 F.R.D. at 483.  They "serve the dual functions of
recognizing the risks incurred by named plaintiffs and compensat-
ing them for their additional efforts."  Parker v. Jekyll & Hyde
Entm't Holdings, LLC, 08 Civ. 7670 (BSJ)(JCF), 2010 WL 532960 at
*1 (S.D.N.Y. Feb. 9, 2010) (Francis, M.J.).  In approving service
awards, a court should consider

> the existence of special circumstances, including the
> personal risk (if any) incurred by the plaintiff-appli-
> cant in becoming and continuing as a litigant, the time
> and effort expended by that plaintiff in assisting in
> the prosecution of the litigation or in bringing to
> bear added value (e.g., factual expertise), any other
> burdens sustained by the plaintiff in lending himself
> or herself to the prosecution of the claim, and, of
> course, the ultimate recovery.

Roberts v. Texaco, Inc., 979 F. Supp. 185, 200 (S.D.N.Y. 1997)
(Brieant, D.J.).

Here, the plaintiffs initiated this action, expended time and energy assisting class counsel, regularly communicated with class counsel, reviewed and explained relevant and necessary information and assumed the risks of retaliation and other consequences for their roles as class representatives (Nussbaum Decl., ¶¶ 16-18).

The $9,000.00 total in service awards represents approximately 2.9% of the settlement fund.  This is a modest award, well within the range of service awards recently approved in the Southern District of New York.  See, e.g., Beckman v. Keybank, N.A., 293 F.R.D. 467, 483 (S.D.N.Y. 2013) (Ellis, M.J.) (awarding incentive payments totaling 1.6% of $4,900,000.00 FLSA settlement); Johnson v. Brennan, 10 Civ. 4712 (CM), 2011 WL 4357376 at *2, 21 (S.D.N.Y. Sept. 16, 2011) (McMahon, D.J.) (awarding incentive payments totaling 9.1% of $440,000.00 FLSA/NYLL settlement); deMunecas v. Bold Food, LLC, 09 Civ. 0440 (DAB), 2010 WL 3322580 at *1, *11 (S.D.N.Y. Aug. 23, 2010) (Batts, D.J.) (awarding incentive payments totaling 3.1% of $800,000.00 FLSA/NYLL settlement).

Accordingly, I grant service awards of $1,000.00 to each of the named plaintiffs.  These awards shall be paid from the settlement fund.

G.   Award of Claims
Administrator Fees

Pursuant to the settlement agreement, plaintiffs retained Angeion Group as the claims administrator.  No class member objected to the fee as detailed in the Notice.  The fee sought by the claims administrator -- $15,239.11 -- is reasonable and is approved.  This amount shall also be paid from the settlement fund.

IV.   Conclusion

Accordingly, for all the foregoing reasons, plaintiffs' motion (Docket Item 59) is granted in part and denied in part as follows:

1.   Pursuant to Fed.R.Civ.P. 23(a) and (b)(3), the class is certified for settlement purposes as all individuals who work or worked for defendants as servers, bartenders, baristas, barbacks, bussers and runners from December 1, 2008 to June 30, 2013.

2.   The Settlement Agreement is unconditionally approved.

3.   The "Effective Date" of the settlement shall be 30 days after the date of this Order if no party appeals this Order. If a party appeals this Order and this Order is affirmed, the

26

Effective Date of the settlement shall be the day after the Court of Appeals' mandate issues.

       4.   Within 10 days of receipt of the first installment of the settlement fund payment from defendants and after the Effective Date of this Order, the claims administrator shall distribute the funds in the settlement account by making the following payments in the order below:

           i.   Paying the claims administrator fee ($15,239.11);

           ii.   Reimbursing class counsel for $607.00 in litigation costs; and

           iii.   Paying service awards of $1,000.00 each to Manuel Lizondro-Garcia, Luis Cruz, Jorge Garcia, Jeraldo Gonzalez, Aleksander Velic, Javier Toledo, Oscar Ramirez, Moises Jimenez and Marco Real.

       5.   Plaintiffs' motion for attorneys' fees is denied without prejudice to renewal within the next thirty days.

       6.   Within 10 days of my resolution of the issue of attorneys' fees and the disbursement of any fees that may be awarded, the claims administrator shall distribute the remaining funds in the settlement account to collective and class members

in accordance with the allocation plan described in the Settle-
ment Agreement.[5]

7.   I shall retain jurisdiction over this action for
the purpose of enforcing the settlement agreement and overseeing
the distribution of settlement funds.   The parties shall abide by
all terms of the Settlement Agreement, which are incorporated
herein, and this Order.

8.   Upon the Effective Date and the resolution of the
issue of attorneys' fees, this litigation shall be dismissed with
prejudice, and all settlement class members who have not excluded
themselves from the settlement or who have opted in to the
lawsuit shall be permanently enjoined from pursuing and/or

---

[5]The Settlement Agreement allocates awards to class members
from the settlement fund after disbursement of the claims
administrator's fees, service awards, and class counsel's fees
and costs (Nussbaum Decl., Ex. 1 at ¶¶ 1.16, 3.4).   Furthermore,
"any fees . . . sought by Class Counsel but not approved by the
Court shall revert to the Net Settlement Fund" from which class
members' awards are distributed (Nussbaum Decl., Ex. 1 at
¶ 3.2(B)).   The claims administrator cannot calculate class
members' awards until after the resolution of the issue of
attorneys' fees and the calculation of the final amount of the
Net Settlement Fund.   Thus, class member awards can only be
disbursed after the issue of attorneys' fees is resolved.

seeking to reopen claims that have been released pursuant to the Settlement Agreement.

Dated:   New York, New York
         October 7, 2014


                              SO ORDERED



                              HENRY PITMAN
                              United States Magistrate Judge


Copies mailed to:

Daniel M. Kirschenbaum, Esq.
Charles E. Joseph, Esq.
Yosef Nussbaum, Esq.
Joseph & Kirschenbaum LLP
5th Floor
233 Broadway
New York, New York 10017

Felice B. Ekelman, Esq.
Jason A. Zoldessy, Esq.
Jackson Lewis LLP
29th Floor
666 Third Avenue
New York, New York 10017